1
2
3
4
5              UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7

8    CHANEL, INC.,                                No. C-09-04996 JCS

9                   Plaintiff,
           v.                                     **REPORT & RECOMMENDATION RE**
10                                                **PLAINTIFF'S MOTION FOR FINAL**
     LIN, ET AL.,                                 **DEFAULT JUDGMENT AGAINST**
11                                                **DEFENDANTS [Docket No. 26]**
                   Defendants.
12   _____/

13

14   **I.      INTRODUCTION**

15          In this trademark infringement action, Plaintiff Chanel, Inc. ("Chanel") brings a Motion for

16   Final Default Judgment Against Defendants ("Motion") in which it seeks default judgment, an

17   award of statutory damages, costs and a permanent injunction against Defendants Xiuyin Lin,

18   Shiguan Wang, Zhongxioubin (individually and jointly also known as Joey Van, Kevin Nakamura,

19   and Kevin Northrop), and Does 1-10.  A hearing on the Motion was held on Friday, April 16, 2010

20   at 9:30 a.m.  Plaintiff filed a supplemental brief and declaration on April 30, 2010.  For the reasons

21   stated below, it is recommended that the Motion be GRANTED.

22   **II.     BACKGROUND**

23          Plaintiff is a New York corporation with its principal place of business located at Nine West

24   57th Street, New York, New York 10019.  Complaint ¶ 3.  Chanel manufactures and distributes a

25   wide range of high quality goods, including handbags, wallets, belts, key chains, shoes and boots,

26   jewelry and watches, which are sold throughout the United States and worldwide.  Compl. ¶ 3; *see*

27   *also* Declaration of Adrienne Hahn Sisbarro in Support of Chanel Inc.'s Motion for Final Default

28   Judgment Against Defendants ("Hahn Decl.") ¶¶ 4-6.  Plaintiff owns a number of federally

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

registered trademarks consisting of the word "Chanel" and variations of the monogram "CC" ("Chanel Marks") which are used in connection with the manufacture and distribution of its products.[1]  Compl. ¶ 11; Hahn Decl. ¶ 4; Request for Judicial Notice ("RJN"), Ex. A (trademark registrations).[2]

Plaintiff filed the Complaint in this action on October 20, 2009, naming Xiuyin Lin, Shiguan Wang, and Zhongxioubin (also known as Joey Van, Kevin Nakamura, and Kevin Northrop), and Does 1-10 as Defendants.  In the Complaint, Plaintiff alleges that Defendants are individuals and/or business entities residing in the People's Republic of China, and that Defendants have registered, established, or purchased the following fifteen domain names: copiedhandbags.com, copyhandbagstore.com, designershoes.bz, buytiffany.com, new-fashion.org, new-fashionshow.com, urbannity.com, watchesinshop.com, knockoffpurses.in, replica-handbags.biz, replicahandbags.in, replica-watches.cc, replicarolex.in, watch-city.net, and watch-replica.com.  Compl. ¶¶ 3, 10.  In the Motion, Plaintiff lists two additional domain names allegedly operated by Defendants that Plaintiff discovered after filing the Complaint: louis-vuitton.bz and breitlingreplica.biz.  Motion at 3 n.3; *see also* Declaration of Stephen M. Gaffigan in Support of Plaintiff's Motion for Final Default Judgment ("Gaffigan Default J. Decl.") ¶ 5.  Plaintiff alleges that Defendants use the seventeen domain names (collectively, "Subject Domain Names") to operate interactive commercial websites which advertise and sell counterfeit, infringing products bearing the Chanel Marks.  Compl. ¶¶ 7, 10.

According to Plaintiff, at some point prior to filing the Complaint it received information that Defendants were selling counterfeit products through the Subject Domain Names.  Hahn Decl. ¶ 8.

---

[1]Plaintiff requests that the Court take judicial notice of its United States trademark registrations. RJN at 1, Ex. A.  Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  The Court finds that Plaintiff's trademark registrations meet the requirements of Rule 201.  Accordingly, the Court recommends that Plaintiff's request for judicial notice be granted.

[2]The Complaint lists twenty trademarks, while the RJN lists only nineteen and includes copies of the trademark registrations for those nineteen marks.  There is no trademark registration provided for the one mark listed in the Complaint but not in the RJN, Registration Number 1,238,001.  At the April 16, 2010 hearing, Plaintiff stipulated that it is only seeking default judgment as to the nineteen trademarks included in the RJN.

United States District Court

For the Northern District of California

Plaintiff retained private investigator Robert Holmes of IPCybercrime.com, LLC, a licensed private investigative firm, to investigate the suspected sales of counterfeit products by Defendants. *Id.* ¶ 9. On January 29, 2010, Holmes accessed Defendants' interactive website at the domain name copyhandbagstore.com and used a credit card to purchase a Chanel branded wallet for $89.99 from the site. Declaration of Robert Holmes in Support of Chanel Inc.'s Motion for Final Default Judgment Against Defendants ("Holmes Decl.") ¶ 4. Holmes requested that the purchase be sent to his address in San Jose, California, and received a confirmation of his purchase via email. Holmes Decl. ¶ 4 & Ex. 1 (copy of email confirmation and printouts of copyhandbagstore.com pages showing wallet purchased by Holmes). Holmes sent the printouts of the Chanel branded wallet he had purchased on copyhandbagstore.com to Chanel representative Adrienne Hahn Sisbarro. *Id.* ¶ 4. Hahn is the Director of Legal Administration for Chanel and is responsible for Chanel's trademark and anti-counterfeiting efforts in the United States. Hahn Decl. ¶ 3. As a result, Hahn is familiar with the manufacture, sale, and distribution of genuine Chanel products and has been trained to identify the distinctions between genuine Chanel merchandise and counterfeit copies of Chanel merchandise. *Id.* Hahn personally inspected the printouts of the wallet Holmes purchased and determined the item to be a non-genuine Chanel branded product. *Id.* ¶ 9.

In January and February of 2010, Stephen M. Gaffigan, counsel for Plaintiff, accessed the websites operating under the Subject Domain Names buytiffany.com, copiedhandbags.com, copyhandbagstore.com, breitlingreplica.biz, louis-vuitton.bz, and new-fashion.org to capture and download the pages of the websites showing products for sale bearing the Chanel Marks. Gaffigan Default J. Decl. ¶ 4. Gaffigan provided printouts of these pages to Hahn, who inspected the products offered for sale bearing the Chanel Marks and determined that the products were non-genuine Chanel products. *Id.* ¶ 4 & Ex. 1; Hahn Decl. ¶ 10. Plaintiff alleges that all of the websites operated at the Subject Domain Names offer for sale products bearing counterfeits of the Chanel Marks. *See* Declaration of Stephen M. Gaffigan in Support of Plaintiff's Ex Parte Application for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Gaffigan Alternate Service Decl."), Ex. 2 (printouts from the Subject Domain Names listed in the Complaint showing products bearing the Chanel Marks); *see also* Gaffigan Default J. Decl.,

3

**United States District Court**

For the Northern District of California

1    Ex. 1 (printouts from the two additional Subject Domain Names listed in the Motion showing

2    products bearing the Chanel Marks).  Further, Plaintiff asserts that Defendants have infringed each

3    of the nineteen Chanel Marks.  *See* Supplemental Declaration of Stephen M. Gaffigan in Support of

4    Plaintiff's Motion for Final Default Judgment ("Supplemental Gaffigan Decl."), Ex. 1 (chart citing

5    examples of Defendants' infringement of each registered mark).

6         According to the Complaint, Defendants "are the past and present moving and conscious

7    forces" behind the websites operated at the Subject Domain Names, and Defendants also own and

8    operate additional websites under domain names unknown to Plaintiff which promote and offer for

9    sale counterfeit, infringing goods.  Compl. ¶¶ 5, 7.  Plaintiff obtained a Registrar Certificate from Go

10   Daddy Software, Inc., an Internet domain name registrar, showing Defendants' registration of the

11   following domain names: copiedhandbags.com (Xiuyin Lin), designershoes.bz (Xiuyin Lin),

12   buytiffany.com (Joey Van), urbannity.com (Shiguan Wang), knockoffpurses.in (Xiuyin Lin),

13   replica-handbags.biz (Shiguan Wang), replicahandbags.in (Xiuyin Lin), replica-watches.cc (Kevin

14   Nakamura), replicarolex.in (Xiuyin Lin), watch-city.net (Kevin Northrop), watch-replica.com

15   (Xiuyin Lin).  Notice of Filing Registrar Certificate, Ex. A (Registrar Certificate provided by Go

16   Daddy Software, Inc.).  Plaintiff also conducted a Whois search to confirm Defendants' registration

17   of the following domain names: copiedhandbags.com (Xiuyin Lin), buytiffany.com (Joey Van),

18   new-fashion.org (Zhongxioubin), new-fashionshow.com (Zhongxioubin), urbannity.com (Shiguan

19   Wang), watchesinshop.com (Zhongxioubin), knockoffpurses.in (Xiuyin Lin), replica-handbags.biz

20   (Shiguan Wang), replicahandbags.in (Xiuyin Lin), replica-watches.cc (Kevin Nakamura),

21   replicarolex.in (Xiuyin Lin), watch-city.net (Kevin Northrop), watch-replica.com (Xiuyin Lin).

22   Gaffigan Alternate Service Decl., Ex. 1 (printout of Whois record for domain names).  Plaintiff

23   alleges that websites operating at breitlingreplica.biz and louis-vuitton.bz are also controlled and

24   operated by Defendants because: 1) the websites operating at knockoffpurses.in and

25   replicahandbags.in (Xiuyin Lin) automatically forward to the louis-vuitton.bz website, and the

26   websites operating at replicarolex.in (Xiuyin Lin), replica-watches.cc (Kevin Nakamura), watch-

27   city.net (Kevin Northrop), and watch-replica.com (Xiuyin Lin) automatically forward to the

28   breitlingreplica.biz website; 2) the domain names breitlingreplica.biz and louis-vuitton.bz are hosted

United States District Court

For the Northern District of California

1  on the same dedicated IP address (124.217.254.45) as the domain names buytiffany.com (Joey Van),

2  copiedhandbags.com (Xiuyin Lin), copyhandbagstore.com, designershoes.bz (Xiuyin Lin),

3  knockoffpurses.in (Xiuyin Lin), replica-handbags.biz (Shiguan Wang), replica-watches.cc (Kevin

4  Nakamura), replicahandbags.in (Xiuyin Lin), replicarolex.in (Xiuyin Lin), urbannity.com (Shiguan

5  Wang), watch-city.net (Kevin Northrop), and watch-replica.com (Xiuyin Lin); 3) breitlingreplica.biz

6  self-identifies as replica-watches.cc; and 4) louis-vuitton.bz self-identifies as copiedhandbags.com

7  and links to that website.  Gaffigan Default J. Decl. ¶ 5 & Ex. 1-2.

8          Plaintiff alleges that Defendants' websites offer for sale counterfeit goods using the Chanel

9  Marks that are of a substantially different quality than Plaintiff's genuine goods.  Compl. ¶ 21.

10  Plaintiff further alleges that Defendants are selling the counterfeit goods with the knowledge that

11  such goods will be mistaken for the genuine products offered for sale by Plaintiff.  *Id.* ¶¶ 21, 26.  As

12  a result, Plaintiff claims Defendants' infringing activities are likely to cause confusion, deception,

13  and mistake in the minds of consumers by creating a false impression that there is a connection or

14  association between Plaintiff and Defendants' counterfeit goods.  *Id.* ¶ 26.  Plaintiff asserts that it is

15  suffering irreparable injury and damages as a result of Defendants' unauthorized and wrongful use

16  of the Chanel Marks.  *Id.* ¶ 28.  Plaintiff alleges that Defendants conduct business with the State of

17  California and within this judicial district through the operation of "fully interactive commercial

18  websites" at the Subject Domain Names, and further allege that "Defendants have advertised and

19  sold their counterfeit goods in the State of California" and within this district.  *Id.* ¶ 7.  Plaintiff also

20  notes that the registry for the .com and .net Subject Domain Names, VeriSign Global Registry

21  Services, is located within this district.  *Id.*

22          The Chanel Marks have been used in interstate commerce to identify and distinguish

23  Plaintiff's high-quality goods for "an extended period of time" and Plaintiff has invested substantial

24  time, money, and other resources developing and promoting the Chanel Marks.  *Id.* ¶¶ 12, 15.

25  Plaintiff asserts that the consuming public readily identifies merchandise bearing the Chanel Marks

26  as high quality luxury goods sponsored and approved by Plaintiff, and that the Chanel Marks qualify

27  as famous marks under 15 U.S.C. § 1125(c)(1).  *Id.* ¶¶ 15-16.  The Chanel Marks have never been

28  assigned or licensed to any of Defendants nor have they been abandoned, and Plaintiff alleges that

United States District Court
For the Northern District of California

1  Defendants have, at all relevant times, had full knowledge of Plaintiff's ownership of and exclusive

2  right to use and license the Chanel Marks.  *Id.* ¶¶ 13-14, 19.

3      The summonses and Complaint were served on Defendants via email on December 3, 2009,

4  pursuant to Plaintiff's Ex Parte Application for Order Authorizing Alternate Service of Process on

5  Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3).[3]  Declaration of Anne E. Kearns in

6  Support of Plaintiff's Motion for Final Default Judgment ("Kearns Decl.") ¶ 2.  Defendants failed to

7  file a responsive pleading or otherwise appear in this action.  The Court entered default under Fed.

8  R. Civ. P. 55(a) against Defendants on January 7, 2010, and Plaintiff now brings a motion for entry

9  of default judgment pursuant to Fed. R. Civ. P. 55(b).

10     Plaintiff asserts two claims against Defendants: (1) trademark counterfeiting and

11 infringement under 15 U.S.C. § 1114, and (2) false designation of origin under 15 U.S.C. § 1125(a).[4]

12 Compl. ¶¶ 31-44.  Plaintiff seeks an injunction prohibiting Defendants from infringing Plaintiff's

13 trademarks and an order requiring the Subject Domain Names to be transferred to Plaintiff.  *Id.* ¶ 45;

14 Motion at 18.  Plaintiff also seeks statutory damages totaling $456,000.00 and an award of $700.00

15 in costs.[5]  Compl. ¶ 45; Motion at 18-19.

16 **III.    ANALYSIS**

17     **A.    Personal Jurisdiction**

18     As a preliminary matter, this Court must determine whether or not it has personal jurisdiction

19 over Defendants Lin, Wang, and Zhongxioubin, individuals and/or business entities who are alleged

20

21     [3]Plaintiff filed its Ex Parte Application for Order Authorizing Alternate Service of Process on

22 Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) on November 24, 2009.  In the Application, Plaintiff requested an order allowing service of process via electronic mail pursuant to Rule

23 4(f)(3) because it was unable to locate Defendants or serve them in any other manner.  On December 2, 2009, this Court issued an Order Authorizing Alternate Service of Process on Defendants Pursuant

24 to Federal Rule of Civil Procedure 4(f)(3).

25     [4]Although the Complaint only lists two causes of action (trademark infringement/counterfeiting and false designation of origin), the Table of Contents in the Motion lists an argument section for a

26 claim for cyberpiracy.  As there is no claim of cyberpiracy included in the Complaint and no discussion of cyberpiracy on the page of the Motion indicated in the Table of Contents, this appears to be a clerical

27 error.

28     [5]The Complaint and Motion also request an award of prejudgment interest.  At the April 16, 2010 hearing, Plaintiff withdrew that request.

United States District Court

For the Northern District of California

to reside and/or conduct substantial business in the People's Republic of China.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (holding that the court properly raised sua sponte the question of whether there was personal jurisdiction over Iraq before determining whether default judgment should be entered).  In *Tuli*, the Ninth Circuit explained that where a plaintiff seeks default judgment, the court may not assume the existence of personal jurisdiction, even though ordinarily personal jurisdiction is a defense that may be waived, because a judgment in the absence of personal jurisdiction is void.  *Id.*  Where there are questions about the existence of personal jurisdiction in a default situation, the court should give the plaintiff the opportunity to establish the existence of personal jurisdiction.  *Id.*

Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, federal courts in California may exercise jurisdiction to the extent permitted by the Due Process Clause of the Constitution.  *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  The Due Process Clause allows federal courts to exercise jurisdiction where either: 1) the defendant has had continuous and systematic contacts with the state sufficient to subject him or her to the general jurisdiction of the court; or 2) the defendant has had sufficient minimum contacts with the forum to subject him or her to the specific jurisdiction of the court.  *Id.* at 1320.  Courts apply a three-part test in determining whether specific jurisdiction exists:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Id.* at 1320 (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (quotation marks omitted)).  As discussed below, the factual allegations and evidence support a finding of specific jurisdiction over Defendants.[6]

---

[6]Because Plaintiff has not pointed to facts indicating that Defendants' contacts with California are continuous and systematic, and because this Court concludes that specific jurisdiction exists, the Court need not reach the question of whether it has general jurisdiction over Defendants.  The Court notes, however, that the standard for establishing general jurisdiction is high, requiring that a defendant's contacts approximate physical presence.  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Based on the facts alleged in the Complaint, it does not appear

### 1.      Purposeful Availment

In order to satisfy the first prong of the test for specific jurisdiction, a defendant must have either purposefully availed itself of the privilege of conducting business activities within the forum or purposefully directed activities toward the forum.  *Id.*  Purposeful availment typically consists of action taking place in the forum that invokes the benefits and protections of the laws of the forum, such as executing or performing a contract within the forum.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  To show purposeful availment, a plaintiff must show that the defendant "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state."  *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).

"In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is." *Jeske v. Fenmore*, 2008 WL 5101808, *4 (C.D. Cal. Dec. 1, 2008) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008)).  "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet."  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Personal jurisdiction is appropriate where an entity is conducting business over the internet and has offered for sale and sold its products to forum residents.  *See Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1077-78 (C.D. Cal. 1999) (holding that the exercise of personal jurisdiction was appropriate based on the "highly commercial" nature of defendant's website); *see also Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 1109, 1122 (C.D. Cal. 2009) (holding that the exercise of personal jurisdiction was appropriate because "by operating a highly commercial website through which regular sales of allegedly infringing products are made to customers in [the forum state], [the defendants] have purposefully availed themselves of the benefits

---

that this standard is met.

1    of doing business in this district").

2       Here, the allegations and evidence presented by Plaintiff in support of the Motion are

3    sufficient to show purposeful availment. Plaintiff has alleged that Defendants operate "fully

4    interactive commercial websites" which they use to advertise and sell "counterfeit and infringing

5    Chanel branded products within this Judicial District," and further allege that Defendants have

6    "advertised and sold their counterfeit goods in the State of California." Compl. ¶ 7. In addition,

7    Plaintiff has provided evidence in support of these allegations. *See* Gaffigan Default J. Decl., Ex. 1

8    & Gaffigan Alternate Service Decl., Ex. 1 (printouts from each of the Subject Domain Names

9    showing products bearing the Chanel Marks). Defendants' fully interactive websites, used to

10   advertise and sell infringing products, constitute affirmative conduct promoting the transaction of

11   business with California. *See Gray & Co.*, 913 F.2d at 770. Such commercial activity in the forum

12   amounts to purposeful availment of the privilege of conducting activities within the forum, thus

13   invoking the benefits and protections of its laws. *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson*

14   *v. Denckla*, 357 U.S. 235, 253 (1958)). Accordingly, the Court concludes that Defendants' contacts

15   with California are sufficient to show purposeful availment.

**2.**      **Claim Arises out of Forum-Related Activities**

17       The second prong of the test for specific jurisdiction requires that the claim be one that arises

18   out of or relates to the defendant's activities in the forum. *Panavision*, 141 F.3d at 1320. This

19   requires a showing of "but for" causation. *Id.* at 1322 ("We must determine if the plaintiff

20   Panavision would not have been injured 'but for' the defendant Toeppen's conduct directed toward

21   Panavision in California."). Here, Defendants' contacts with the forum are their sales of infringing

22   and counterfeit products to customers in this state; but for Defendants' infringing activity, Plaintiff

23   would not have been injured. *See id.* (finding "but for" causation to be met because but for

24   defendant's infringing activity, the injury to plaintiff would not have occurred). Accordingly, the

25   Court concludes that the second requirement for specific jurisdiction is satisfied.

**3.**      **Reasonableness of Exercise of Jurisdiction**

27       The third prong of the test for specific jurisdiction provides that the exercise of jurisdiction

28   must comport with fair play and substantial justice. *Id.* at 1320. To determine whether the exercise

9

United States District Court

For the Northern District of California

1    of jurisdiction over a non-resident defendant comports with fair play and substantial justice, a court

2    must consider seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendants of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

7    *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). There is a presumption

8    that the exercise of jurisdiction is reasonable when the first two prongs of the specific jurisdiction

9    test have been met, and the burden is on the defendant to establish unreasonableness. *See*

10   *Schwarzenegger*, 374 F.3d at 802 (stating that after the plaintiff meets his burden to satisfy the first

11   two prongs, the burden then shifts to the defendant to present a "compelling case" that jurisdiction is

12   unreasonable). The reasonableness factors enumerated in *Core-Vent* weigh in favor of finding that

13   the exercise of jurisdiction comports with fair play and substantial justice in this case.

14       First, the forum state has a strong interest in adjudicating the dispute. Although none of the

15   parties is a California citizen, Plaintiff operates retail establishments in this forum, claims to have

16   suffered damage as a result of Defendants' infringing activities in this forum, and alleges that

17   Defendants sell the infringing products to California citizens. *See Nissan Motor Co. Ltd. v. Nissan*

18   *Computer Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000) ("California has a strong interest in

19   protecting its citizens from trademark infringement and consumer confusion."). This factor thus

20   favors a finding that the exercise of jurisdiction is reasonable.

21       Second, the extent of Defendants' purposeful interjection into the forum state's affairs is

22   unknown, as Plaintiff has not alleged or presented evidence of the amount of infringing products

23   Defendants sell to California customers, therefore this factor is neutral.

24       Third, the burden on Defendants, as residents of China, to litigate in California is significant,

25   but the inconvenience is not so great as to deprive them of due process, particularly given

26   Defendants' purposeful availment of the benefits of conducting business within the forum. *See*

27   *Panavision*, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the

28   assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation

of due process, it will not overcome clear justifications for the exercise of jurisdiction.'").

Fourth, consideration of the most efficient judicial resolution is "no longer weighed heavily given the modern advances in communication and transportation," therefore this factor is also neutral because there may be witnesses and evidence located in both California and China. *Id.*

Fifth, with respect to the existence of an alternative forum, Defendants have not come forward to request an alternative forum, and the Court is unaware of whether there is such a forum. This factor is neutral.

Sixth, with respect to the importance of the forum to the plaintiff's interest in convenient and effective relief, courts generally give little weight to the plaintiff's inconvenience. *See id.* However, if a forum is available in China, it would be costly and inconvenient for Plaintiff to litigate in China, therefore this factor weighs slightly in Plaintiff's favor.

Finally, regarding the extent to which the exercise of jurisdiction would conflict with the sovereignty of Defendants' state, "[l]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) (quoting *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)). While this factor weighs in favor of Defendants, it is not sufficient to defeat the Court's exercise of personal jurisdiction where the other *Core-Vent* factors support a finding of personal jurisdiction.

Balancing these seven factors, the Court concludes that the exercise of jurisdiction over Defendants is reasonable.

**B.      Legal Standard Regarding Entry of Default Judgment**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The district court has discretion in its decision to grant or deny relief upon an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956) (affirming district

court's denial of default judgment).  The court may consider the following factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d).  On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. *Id*.

Damages or other forms of relief awarded are constrained by the rule that judgment by default "must not be different in kind from, or exceed in amount, what is demanded  in the [complaint]."  Fed. R. Civ. P. 54(c).

**C.**　　**Eitel Factors**

**1.**　　**Possibility of Prejudice to Plaintiff**

To the extent that Defendants have failed to appear in and otherwise defend this action, Plaintiff will be left without a remedy if default judgment is not entered in its favor.  This factor therefore favors entry of default judgment.

**2.**　　**Excusable Neglect**

There is no evidence in the record that Defendants' failure to appear and otherwise defend was the result of excusable neglect.  Rather, Defendants failed to appear after being served with the Complaint in this action, indicating that their failure to appear was willful.  This factor favors entry of default judgment.

12

### 3.     Allegations and Substantive Merits of Claims

#### i)     Trademark Counterfeiting & Infringement

To prevail on a claim of trademark infringement, a holder of a registered service mark must show that another person is using: (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.  15 U.S.C. § 1114(1)(a); *Century 21 Real Estate Corp. v. Sanlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).  Neither intent nor actual confusion are necessary to establish a likelihood of confusion.  *Id.*  The critical determination is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes that product."  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (quoting *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003)) (quotation marks omitted).

Here, Plaintiff has alleged that it is the owner of the Chanel Marks that are registered with the United States Patent and Trademark Office, that Defendants use the marks to sell counterfeit products bearing the Chanel Marks over the internet, and that these activities are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' counterfeit goods.  In addition, Plaintiff presented the trademark registrations for the Chanel Marks in support of the motion.  *See* RJN, Ex. A.  These allegations and evidence are sufficient to establish that Defendants infringed upon the nineteen Chanel Marks listed in Exhibit A to Plaintiff's RJN.  Accordingly, the Court concludes that Plaintiff is entitled to default judgment on its trademark infringement claim.

#### ii)     False Designation of Origin

Plaintiff alleges that Defendants' use of the Chanel Marks constitute false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  That section provides as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likley to be damaged by such act.

15 U.S.C. § 1125(a)(1).

In order to prevail in an action for false designation of origin, a plaintiff must show that: 1) the terms or logos in question are valid and protectable trademarks; 2) the plaintiff owns these marks as trademarks; 3) the plaintiff used these marks in commerce; and 4) the defendants "used terms or designs similar to plaintiff's marks without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods." *See Chimney Safety Inst. of Am. v. Chimney King*, 2004 WL 1465699, *2 (N.D. Cal. May 27, 2004) (citing *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046-47 n.8 (9th Cir. 1999)).

Plaintiff has presented evidence satisfying all of the elements listed above with respect to the nineteen registered Chanel Marks contained in the RJN. First, Plaintiff has presented evidence that it owns the nineteen Chanel Marks, thus satisfying the first two elements. *See* Hahn Decl. ¶ 4; RJN, Ex. A (trademark registrations for Chanel Marks). Second, Plaintiff has presented evidence that it uses the mark in commerce. Third, Defendants' use of the Chanel Marks in counterfeit products sold through their website creates a likelihood of confusion. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogation in part on other grounds recognized by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). Therefore, the Court concludes Plaintiff is entitled to default judgment on its false designation of origin claim.

### 4. Conclusion

Based on consideration of the factors discussed above, it is recommended that default judgment be entered against Defendants on Plaintiff's trademark infringement and false designation of origin claims.

**United States District Court**
For the Northern District of California

1    **D.      Remedies**

2         **1.      Injunctive Relief**

3         Plaintiff requests that the Court grant a permanent injunction barring Defendants from further

4    interfering with Plaintiff's business.  In particular, Plaintiff requests entry of the following

5    injunction:

6         Defendants and their respective officers, agents, servants, employees and attorneys, and all
          persons in active concert and participation with [them] are hereby restrained and enjoined

7         from:

8         (a) manufacturing or causing to be manufactured, importing, advertising, or promoting,
          distributing, selling or offering to sell counterfeit and infringing goods using the Chanel

9         Marks;

10        (b) using the Chanel Marks in connection with the sale of any unauthorized goods;

11        (c) using any logo, and/or layout which may be calculated to falsely advertise the services or
          products of Defendants, copiedhandbags.com, copyhandbagstore.com, designershoes.bz,

12        buytiffany.com, new-fashion.org, new-fashionshow.com, urbannity.com,
          watchesinshop.com, knockoffpurses.in, replica-handbags.biz, replicahandbags.in, replica-

13        watches.cc, replicarolex.in, watch-city.net, watch-replica.com, louis-vuitton.bz, and
          breitlingreplica.biz, and/or any other website or business, as being sponsored by, authorized

14        by, endorsed by, or in any way associated with Chanel;

15        (d) engaging in any act which is likely to falsely cause members of the trade and/or of the
          purchasing public to believe any goods or services of Defendants, copiedhandbags.com,

16        copyhandbagstore.com, designershoes.bz, buytiffany.com, new-fashion.org, new-
          fashionshow.com, urbannity.com, watchesinshop.com, knockoffpurses.in, replica-

17        handbags.biz, replicahandbags.in, replica-watches.cc, replicarolex.in, watch-city.net, watch-
          replica.com, louis-vuitton.bz, breitlingreplica.biz, and/or any other website or business, are in

18        any way endorsed by, approved by, and/or associated with Chanel;

19        (e) using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks in
          connection with the publicity, promotion, sale, or advertising of any goods sold by

20        Defendants, copiedhandbags.com, copyhandbagstore.com, designershoes.bz, buytiffany.com,
          new-fashion.org, new-fashionshow.com, urbannity.com, watchesinshop.com,

21        knockoffpurses.in, replica-handbags.biz, replicahandbags.in, replica-watches.cc,
          replicarolex.in, watch-city.net, watch-replica.com, louis-vuitton.bz, breitlingreplica.biz,

22        and/or any other website or business, including, without limitation, handbags, wallets, belts,
          key chains, shoes, boots, jewelry, and/or watches;

23

24        (f) affixing, applying, annexing or using in connection with the sale of any goods, a false
          description or representation, including words or other symbols tending to falsely describe or
          represent goods by Defendants, copiedhandbags.com, copyhandbagstore.com,

25        designershoes.bz, buytiffany.com, new-fashion.org, new-fashionshow.com, urbannity.com,
          watchesinshop.com, knockoffpurses.in, replica-handbags.biz, replicahandbags.in, replica-

26        watches.cc, replicarolex.in, watch-city.net, watch-replica.com, louis-vuitton.bz,
          breitlingreplica.biz, and/or any other website or business, as being those of Chanel or in any

27        way endorsed by Chanel;

28        (g) offering such goods in commerce;

15

**United States District Court**
For the Northern District of California

1    (h) otherwise unfairly competing with Chanel;

2    (i) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized
     products or any books or records which contain any information relating to the importing,
3    manufacturing, producing, distributing, circulating, selling, marketing, offering for sale,
     advertising, promoting, renting or displaying of all unauthorized products which infringe the
4    Chanel Marks; and

5    (j) effecting assignments or transfers, forming new entities or associations or utilizing any
     other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth
6    above.

7    Proposed Permanent Injunction at 1-3.  Plaintiff also requests that the Court order that the domain

8    names copiedhandbags.com, copyhandbagstore.com, designershoes.bz, buytiffany.com, new-

9    fashion.org, new-fashionshow.com, urbannity.com, watchesinshop.com, knockoffpurses.in, replica-

10   handbags.biz, replicahandbags.in, replica-watches.cc, replicarolex.in, watch-city.net, watch-

11   replica.com, louis-vuitton.bz, and breitlingreplica.biz be transferred to Plaintiff.  Proposed Default

12   Judgment at 2-3.

13        Injunctive relief is available to prevent future trademark infringement under the Lanham Act.

14   15 U.S.C. § 1116.  "Injunctive relief is the remedy of choice for trademark and unfair competition

15   cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing

16   infringement."  *Century 21*, 846 F.2d at 1180.  In order to obtain injunctive relief, a plaintiff must

17   show either: (1) probable success on the merits and the possibility of irreparable harm, or (2) the

18   existence of serious questions on the merits and the balance of hardships tipping in its favor.  *Vision*

19   *Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989).  In an action for trademark

20   infringement, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that

21   the plaintiff will suffer irreparable harm if injunctive relief is not granted."  *Id.*

22        Here, Plaintiff has provided evidence of Defendants' infringing activity, thereby showing a

23   probability of success on the merits.  Plaintiff has also established the likelihood of confusion by

24   showing Defendants' use of counterfeit Chanel Marks, giving rise to a presumption that Plaintiff

25   will suffer irreparable harm if injunctive relief is not granted.  Further, Plaintiff asserts that it has

26   invested substantial time and money in advertising and promoting the Chanel Marks, as a result of

27   which Plaintiff's marks have become widely recognized and Plaintiff has developed reputation and

28   goodwill.  *See Phillip Morris USA, Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004)

United States District Court
For the Northern District of California

1  (considering plaintiff's investment in advertising and promoting, reputation, and goodwill in finding

2  irreparable harm).  Because Plaintiff will suffer irreparable injury to its reputation and goodwill if

3  injunctive relief is not granted, the Court recommends that Plaintiff's request for a permanent

4  injunction be granted.

5  Having determined that Plaintiff is entitled to injunctive relief, the Court must determine the

6  appropriate scope of the injunctive relief.  Rule 65 of the Federal Rules of Civil Procedure requires

7  that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be

8  specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained."

9  Fed. R. Civ. P. 65(d).  Generally, "an injunction must be narrowly tailored to remedy only the

10 specific harms shown by the plaintiffs rather than to enjoin all possible breaches of the law." *Iconix,*

11 *Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998-1002 (N.D. Cal. 2006) (citing *Price v. City of Stockton*,

12 390 F.3d 1105, 1117 (9th Cir. 2004).  Plaintiff requests that the Court grant an injunction prohibiting

13 Defendants from: manufacturing, distributing, or selling counterfeit goods; making unauthorized use

14 of the Chanel Marks; falsely advertising or representing products or services as associated with or

15 endorsed by Plaintiff; using any counterfeit or imitation of the Chanel Marks; offering any such

16 infringing goods in commerce; unfairly competing with Plaintiff; concealing or destroying

17 unauthorized products or records relating to infringement of the Chanel Marks; and attempting to

18 avoid the prohibitions of the injunction through assignment, transfer, or forming new entities.  The

19 Court finds the requested relief narrowly tailored to remedy the harms shown by Plaintiff and

20 necessary to effectuate the purpose of preventing Defendants from unlawfully infringing on

21 Plaintiff's marks.  Further, the requested relief is in line with injunctive relief granted by other

22 courts.  *See, e.g., Chanel, Inc. v. Sophia Zhang*, Case No. 3:09-cv-01977-MMC (N.D. Cal. Dec. 7,

23 2009) (including identical language in permanent injunction).  Accordingly, the Court recommends

24 that Plaintiff's proposed injunction be adopted in its entirety.

25 The Court also finds Plaintiff's request for an order requiring Defendants to transfer the

26 Subject Domain Names to Plaintiff in order to effectuate the purpose of the injunctive relief

27 reasonable.   Plaintiff has provided evidence showing Defendants are tied to all of the Subject

28 Domain Names and that all of the Subject Domain Names sell counterfeit goods.

Finally, the Court should grant Chanel's request that the top level domain (TLD) Registries for the Subject Domain Names be required to place the Subject Domain Names on Registry Hold status, thus removing them from the TLD zone files maintained by the Registries which link the Subject Domain Names to the IP address where the associated websites are hosted.  Although the Court expressed concern at the hearing as to whether it was appropriate to issue such an order against a third party, based upon the arguments made in Chanel's supplemental brief, the Court is persuaded that this remedy is authorized under 15 U.S.C. § 116 and necessary to effectuate the purposes of the injunction in this case.  Further, the Court agrees with Judge Zimmerman that while the transfer of domain names is expressly permitted in *in rem* actions for cyberpiracy under 15 U.S.C. § 1125(d), an *in rem* action is not the *exclusive* remedy for a plaintiff aggrieved by a trademark violation in cyberspace.  *See* Second Declaration of Stephen M. Gaffigan ("Second Gaffigan Decl."), Ex. D (Order Deny Defendant's Motion to Strike, Case No. C-09-1972 BZ (N.D. Cal.  January 19, 2010);  *see also Louis Vuitton Malletier, S.A. v. Absolutee Corp., Ltd.*, Case No. 3:09-cv-05612 MMC (N.D. Cal. April 19, 2010) (ordering transfer of domain names on default judgment where plaintiff asserted claims for trademark infringement and false designation of origin under Lanham Act but did not assert cyberpiracy claim).

### 2.    Statutory Damages

The Lanham Act provides that a trademark owner may recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action where a plaintiff has established trademark infringement. 15 U.S.C. § 1117(a).  As an alternative to seeking damages in the form of lost profits, a plaintiff may elect to receive an award of statutory damages in trademark actions involving the use of a counterfeit mark. 15 U.S.C. § 1117(c).  Under the Lanham Act, a court may award "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.* § 1117(c)(1).  A court may grant enhanced damages of up to $2,000,000 per counterfeit mark on a finding of willful infringement.  *Id.* § 1117(c)(2).  Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark.  *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216-17 (9th Cir. 2003).  Willfulness can also be inferred from a defendant's failure to defend.

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  If statutory damages are elected, a court has wide discretion in determining the amount of statutory damages to be awarded.  *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham*, 259 F.3d 1186, 1194 (9th Cir. 2001).

Here, Plaintiff requests an award of $3,000.00 per registered Chanel Mark (totaling nineteen marks) per type of goods sold (totaling eight - handbags, wallets, belts, key chains, shoes and boots, jewelry, and watches) for a total award of $456,000.00.  Motion at 16.  Plaintiff bases its request on the statutory minimum ($1,000.00 per counterfeit mark per type of good sold) trebled to reflect Defendants' willfulness.  Plaintiff alleges that Defendants have knowingly sold or offered for sale goods bearing marks which are identical to the Chanel Marks with the intent to capitalize on the reputation and goodwill of the marks, and Plaintiff has provided evidence of the infringement of each of the nineteen marks.  *See* Supplemental Gaffigan Decl., Ex. 1.  Additionally, Defendants have failed to appear or defend this action.  Defendants' infringement is therefore willful and the Court finds Plaintiff's request for an award of $456,000.00 to be reasonable.  *See Chanel, Inc. v. Doan*, 2007 WL 781976, at *6 (N.D. Cal. Mar. 13, 2007) (awarding $127,701.00 in statutory damages for willful infringement of six federally registered trademarks); *Adobe Systems Inc. v. Kern*, 2009 WL 5218005, at *9 (N.D. Cal. Nov. 24, 2009) (awarding $250,000 in statutory damages for willful infringement of five federally registered trademarks); *Adobe Systems, Inc. v. Taveira*, 2009 WL 506861, at *6 (N.D. Cal. Feb. 27, 2009) (awarding $250,000 in statutory damages for willful infringement of five federally registered trademarks).  Accordingly, this Court recommends entry of a monetary judgment in favor of Plaintiff in the amount of $456,000.00 in statutory damages based on Defendants' trademark infringement.

### 3.    Costs

Under the Lanham Act, a plaintiff that prevails on a claim under § 1125(a) is entitled to costs.  15 U.S.C. § 1117(a).  Plaintiff has prevailed on its false designation of origin claim under § 1125(a) and therefore is entitled to costs.  Plaintiff states that it has incurred costs in the amount of $700.00 consisting of the filing fee ($350.00) and the process server fees ($350.00).  *See* Kearns Decl. ¶¶ 10-11; Holmes Decl. ¶ 5.

United States District Court
For the Northern District of California

Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred."  Therefore, Plaintiff's costs of $350.00 in filing fees and $350.00 for service, totaling $700.00, are allowable and should be awarded in full.

## IV.    CONCLUSION

It is recommended that the Court GRANT the Motion.  Default judgment should be entered against all Defendants on Plaintiff's trademark infringement and false designation of origin claims.  The Court should award $456,000.00 in statutory damages on the basis of Defendants' trademark infringement, for which Defendants shall be jointly and severally liable.  The Court should also award Plaintiff's costs, in the amount of $700.00.

A permanent injunction should be entered against Defendants as follows:

Defendants and their respective officers, agents, servants, employees and attorneys, and all persons in active concert and participation with them are hereby restrained and enjoined from:

(a) manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods using the Chanel Marks;

(b) using the Chanel Marks in connection with the sale of any unauthorized goods;

(c) using any logo, and/or layout which may be calculated to falsely advertise the services or products of Defendants, copiedhandbags.com, copyhandbagstore.com, designershoes.bz, buytiffany.com, new-fashion.org, new-fashionshow.com, urbannity.com, watchesinshop.com, knockoffpurses.in, replica-handbags.biz, replicahandbags.in, replica-watches.cc, replicarolex.in, watch-city.net, watch-replica.com, louis-vuitton.bz, and breitlingreplica.biz, and/or any other website or business, as being sponsored by, authorized by, endorsed by, or in any way associated with Chanel;

(d) engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, copiedhandbags.com, copyhandbagstore.com, designershoes.bz, buytiffany.com, new-fashion.org, new-fashionshow.com, urbannity.com, watchesinshop.com, knockoffpurses.in, replica-handbags.biz, replicahandbags.in, replica-watches.cc, replicarolex.in, watch-city.net, watch-replica.com, louis-vuitton.bz, breitlingreplica.biz, and/or any other website or business, are in any way endorsed by, approved by, and/or associated with Chanel;

(e) using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants, copiedhandbags.com, copyhandbagstore.com, designershoes.bz, buytiffany.com, new-fashion.org, new-fashionshow.com, urbannity.com, watchesinshop.com, knockoffpurses.in, replica-handbags.biz, replicahandbags.in,

replica-watches.cc, replicarolex.in, watch-city.net, watch-replica.com, louis-vuitton.bz, breitlingreplica.biz, and/or any other website or business, including, without limitation, handbags, wallets, belts, key chains, shoes, boots, jewelry, and/or watches;

(f) affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods by Defendants, copiedhandbags.com, copyhandbagstore.com, designershoes.bz, buytiffany.com, new-fashion.org, new-fashionshow.com, urbannity.com, watchesinshop.com, knockoffpurses.in, replica-handbags.biz, replicahandbags.in, replica-watches.cc, replicarolex.in, watch-city.net, watch-replica.com, louis-vuitton.bz, breitlingreplica.biz, and/or any other website or business, as being those of Chanel or in any way endorsed by Chanel;

(g) offering such goods in commerce;

(h) otherwise unfairly competing with Chanel.

(i) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distribution, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe the Chanel Marks; and

(j) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

Finally, the Court should further order as follows:

(k) In order to give practical effect to the Permanent Injunction, the domain names copiedhandbags.com, copyhandbagstore.com, designershoes.bz, buytiffany.com, new-fashion.org, new-fashionshow.com, urbannity.com, watchesinshop.com, knockoffpurses.in, replica-handbags.biz, replicahandbags.in, replica-watches.cc, replicarolex.in, watch-city.net, watch-replica.com, louis-vuitton.bz, and breitlingreplica.biz are hereby ordered to be immediately transferred by Defendants, their assignees and/or successors in interest or title to Plaintiff's control. To the extent the current Registrars do not facilitate the transfer of the domain names to Plaintiff's control within ten (10) days of receipt of this judgment, the Registries and/or their agents shall, within thirty (30) days, transfer the domain names to a United States based Registrar of Plaintiff's choosing, and that Registrar shall transfer the domain names to Plaintiff; and

(l)  Upon Plaintiff's request, the top level domain (TLD) Registries for the Subject Domain Names, within thirty (30) days of receipt of this Order shall place the Subject Domain Names on Registry Hold status, thus removing them from the TLD zone files maintained by the Registries which link the Subject Domain Names to the IP address where the associated websites are hosted.

Dated:  May 7, 2010

_____

JOSEPH C. SPERO
United States Magistrate Judge